BOARD OF IMPROVEMENT v. SCHOOL DISTRICT.

Opinion delivered June 11, 1892.

*Assessment for local improvements—Liability of school buildings.*

While the Constitution does not exempt school buildings from assessment for local improvements, the statute which provides that all real property within a city, or within a district thereof, may be assessed for local improvements of a public nature (Mansf. Dig. sec. 825) does not contemplate that school property should be assessed.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Judge.

*W. G. Whipple* for appellant.

School buildings and grounds are exempt from general or ordinary taxation. Const. art. 16, sec. 5 ; Mansf. Dig. sec. 5597. But this does not exempt them from local assessment. Const. art. 19, sec. 27 ; Cooley on Tax. (1st ed.), p. 147 ; 6 L. R. A. 156 ; 36 Ind. 338 ; 10 Am. Rep. 36 ; Dillon, Mun. Corp. vol. 2, secs. 776–7. Churches, though exempt from general taxation, are liable to local assessment. Cooley, Tax. (1st ed.), p. 458 ; 36 Ind. 338 ; 10 Am. Rep. 36 ; 11 John. 77 ; Elliott on Roads and Streets, p. 403 ; Desty on Tax. vol. 1, p. 121 ; 13 Pa. St. 104 ; 6 R. I. 235 ; 2 Mich. 587 ; 38 Ind. 3 ; 8 Bush, 508 ; 6 L. R. A. p. 852–4. Hospitals, asylums, etc., come under the same head. 19 Ohio, p. 110 ; 50 Mo. 153 ; 115 Ill. 245 ; 69 N. Y. 353 ; 116 Mass. 181 ; 17 Am. Rep. 153. Also cemeteries. Elliott, Roads, etc. 403 ; Cooley, Tax. 458 ; 7 Md. 517 ; 46 N. Y. 506.

The same doctrine applies to institutions of learning. Elliott, p. 403; Cooley, p. 458; 8 R. I. 474; Desty, Tax. p. 121. A school district is not a municipal corporation, nor in any sense part of the governmental machinery. See 1 Dill. Mun. Corp. secs. 22, 24; Elliott, Roads and Streets, p. 403; 55 Ark. 148; Desty on Tax. vol. 1, p. 121; 26 Mo. 468; 55 Ia. 150; 22 N. E. Rep. 624; 46 Ia. 275; Cooley, Tax. 146.

*Morris M. Cohn* for appellee.

The property held by school districts is not owned by them, but is held by the city in trust. Mansf. Dig. secs. 825 to 895, 6120, 6269, 6270. In the absence of statutory provisions, the property of a public political body is not subject to assessment or taxation. Mansf. Dig. sec. 835; 13 Ark. 752; 21 *id.* 40; 116 Mass. 189; Cooley, Tax. (1876) 130; 1 DuVall, 295; 31 Ark. 387. School districts are *quasi* public corporations. 38 Ark. 454; 26 Ark. 37; 1 Dill. Mun. Corp. (4th ed.) secs. 24, 25, pp. 43–4, note 3; 43 N. W. Rep. 822; Elliott, Roads and Streets, pp. 403, 404. See cases 94 Ind. 554; 71 N. Y. 498; 116 Mass. 193; 17 Wall. 329; 12 L. R. A. 852. These cases show that public property of the United States, the State, county or the city are not subject to local assessments. See also 17 Wall. 329; 80 N. Y. 302, 306; 42 Pa. 21; 51 Ill. 39, 52; 44 Conn. 360; 26 N. E. Rep. 403; 126 Ind. 261; 26 N. E. Rep. 156.

HEMINGWAY, J. This case involves the question of the liability of a public school house to assessment under the provisions of the digest with reference to "assessing property for local improvements in cities of the first class." Mansf. Dig. sec. 825 *et seq*. The school board contends that the school house is not liable to such assessment, while the board of improvement contends that it is. It is conceded that the improvement district was regularly organized, and that the school house is embraced within it; the contention is that because it is a school

house, belonging to a public school board, it is not liable to the assessment. The claim of exemption is placed : first, upon the fifth section of the sixteenth article of the Constitution of 1874, which provides that "public property, used exclusively for public purposes, churches used as such, cemeteries used exclusively as such, school buildings and apparatus, libraries and grounds used exclusively for school purposes, and buildings and grounds and materials used exclusively for public charity," shall be exempt from taxation ; and, second, upon the terms of the act that regulates the assessment of property for local improvements, and describes the property to be assessed simply as "all the real property situated in the district."

We have no difficulty in disposing of the first ground relied upon. The rule established by a consensus of authorities—text writers and adjudged cases—is that the constitutional exemption refers alone to taxes for general purposes of revenue, and has no reference to special taxes or assessments for local improvements. If the case of *Peay* v. *Little Rock*, 32 Ark. 31, is an authority against it, that of *Davis* v. *Gaines*, 48 Ark. 370, is in support of it ; and if there be any conflict between these cases, we approve the latter, as right upon principle and in line with the authorities. Cooley, Tax'n, (2d ed.), p. 207, and cases cited.

As to the second ground relied upon to sustain the claim of exemption, we find the authorities divided. The argument in favor of the exemption is that as the statute, in defining the property to be assessed, does not expressly mention public property or include it by any necessary implication, the presumption is that it was not intended to be assessed.

A leading case in support of the contention is *Worcester County* v. *Worcester*, 116 Mass. 193. The question there arose upon the liability of a court house to

assessment by a sewer district. The court held that, although it was not exempt by the statute, which had reference to general taxes only, it was free from taxation; because, being public property, acquired by public funds, managed by public authorities, constituting an instrumentality for the performance of public functions, it was not to be deemed a subject of taxation, either general or special, unless the intent of the legislature to render it so clearly appeared.

In the case of the *City of Atlanta* v. *First Presbyterian Church*, 12 L. R. A. 852, the question of the liability of a church to assessment was presented to the Supreme Court of Georgia. The statute provided that all real estate abutting on the street improved should be assessed, and the contention was that churches were expressly exempted from taxation, and that if the exemption applied to general taxes only, it implied an exemption from special taxes or assessments. The court held that the statutory exemption furnished no immunity from the special taxes, and that there was no implied exemption in favor of churches; but in discussing the latter question Judge Bleckley said: "We can be morally certain that they (the terms of the act providing for the assessment) comprehend more than the legislature intended they should; for they cover, by their letter, public as well as private property, and subject the whole alike to assessment, lien, levy and sale. That the public property of the United States, the State, county or the city was intended to be dealt with thus is so improbable that we can have no hesitation in holding that an implied exception as to all public property can and should be engrafted upon the act by construction."

In the case of the *County Com'rs, etc.,* v. *Maryland Hospital*, 62 Md. 127, the question arose upon the assessment of property held by the Board of Managers of the State Hospital, for street construction. The court said

"that to bind the land of the State in any way that may divest it from the State, or destroy or impair one of its established agencies or means for carrying on its functions, the legislature must unequivocally give its sanction. * * * It is not material whether the State's property may be taken from it by a tax in the nature of assessment for benefits or in some other way. The danger exists of taking that which belongs to and is essential to the State; and it cannot be exposed to this danger without its direct sanction."

A like conclusion has been reached by other courts. *City of Toledo* v. *Board of Education*, 26 N. E. Rep. (O.), 403; *Edgerton* v. *Huntington School Twp.* 126 Ind. 261; *State* v. *Hartford*, 3 Am. & Eng. Corp. Cases, 610.

Although a special tax or assessment is not usually embraced within the meaning of the general term "tax," the rule under which public property is presumed to be exempt from one justifies the presumption as to the other. In speaking of the latter, Judge Cooley says: "Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the State and its municipalities and which is held by them for governmental purposes. All such property is taxable, if the State shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the State

and by all its municipalities for governmental purposes
was intended to be excluded, and the law will be admin-
istered as excluding it in fact." Cooley on Taxation
(2d ed.), p. 172.

It is uniformly conceded that this rule is correct
when applied to general taxation ; the reason sometimes
given for it is the improbability that the legislature
would levy a tax upon that which results from a tax,
and must be replaced by a tax, and which is used for
governmental purposes ; another reason is found in the
rule of statutory construction which presumes that the
legislature never intends to affect or transfer any gov-
ernmental right or property, unless it expresses its inten-
tion to do so in explicit terms or makes the inference
irresistible.  Whichever be the true reason of the rule,
it is well settled ; and we think it should apply alike to
special, and to general, tax laws.

If it be argued that the reasoning upon which the
rule is placed does not apply to special taxes for local
improvements, because the levy would fall upon one
public body for the benefit of a smaller one, or because
the entire school district would pay the tax while the
small improvement district must bear the loss from the
exemption, the answer is that the same is the case with
regard to general taxes.  Exemption of the State House
and other State institutions relieves every taxable sub-
ject in the State from the burden of taxation, but it
deprives the particular county or school district in which
they are situate of the entire county or school tax ; and
so the exemption of county property from State taxes
benefits the county only, and deprives the entire State
of revenue ; still, in all such cases, it is held that exemp-
tion is implied wherever liability is not expressed or
necessarily implied.  If the disparity of burden and
benefit does not prevent the operation of the rule as to
general taxes, we see no reason why it should as to

360 BOARD OF IMPROVEMENT *v*. SCHOOL DIST. [56

special assessments. See Endlich on Int. Stat. secs. 161–3; Sedg. on Const. Stat. pp. 28, 337, 521; Suth. Stat. Const. p. 421; *Galveston Wharf Co.* v *Galveston*, 63 Tex. 14 ; *Rochester* v. *Rush*, 80 N. Y. 302 ; *People* v. *Brooklyn Assessors*, 111 N. Y. 505 ; *Jones* v. *Tatham*, 20 Penn. State, 398 ; *Directors of Poor* v. *School Directors*, 42 Penn. State, 21 ; 2 Dill Mun. Corp. (4th ed.), sec. 773 ; *People* v. *Doe*, 36 Cal. 220 ; *West Hartford* v. *Board*, 44 Conn. 360.

It is argued that, upon the authorities, exemptions of public property from local assessments is denied, and cases to sustain the argument are to be found, decided by high and learned courts. See *St. Louis Public School* v. *St. Louis*, 26 Mo. 468 ; *Sioux City* v. *School District*, 55 Ia. 150 ; *McLean County* v. *Bloomington*, 106 Ill. 209; *Adams County* v. *Quincy*, 130 Ill. 566.

But in our opinion they are based upon error. The reason upon which they rest, as stated by the Supreme Court of Iowa, is that "taxation is the rule and exemption the exception," and that statutes under which exceptions are claimed must be strictly construed. To sustain this, Cooley is cited. The same reason is given by the Supreme Court of Illinois, and Dillon is cited. Both courts seem to have overlooked the fact that the authors in the citations made were considering the subject with reference to private property, and had stated the rule with reference to public property to be that exemptions would be implied unless otherwise expressed. Cooley on Tax'n (2d ed.), p. 172; 2 Dill. Mun. Corp. (4th ed.), sec. 743.

It is argued that even if public property is exempt, the exemption does not extend to the property of public school districts, inasmuch as they are not, strictly speaking, municipal corporations, and education is not a governmental function. The Constitution provides that the State shall ever maintain free public schools, and in per-

forming this duty it exercises a function strictly public
and governmental. It created school districts and im-
posed upon them in part this duty, and in order to dis-
charge it they own school houses. They have no other
duty than to perform for the State this public function,
and only that they may do it is the house held. The
State may abolish them, take the property, and under-
take directly or through other agencies this public func-
tion. The means of controlling the property would
thereby be changed, but its use would be unchanged ;
and there is nothing in the policy of the law to exempt
the property while held and controlled by the State,
which would deny the exemption while held by the
State's agent and used in the performance of its duties.
*Green* v. *U. S.* 9 Wall. 655, and authorities above cited.

There is nothing in the act to require the inference
that it was intended to embrace public property held by
the Government, the State or any of the State's sub-
ordinate agencies and used for public purposes. It could
not include the first, and this the legislature no doubt
knew ; but there is as much reason to suppose that it
intended to include the property of the Government as
that of the State. An exception must be implied as to
the property of the Government ; and as no appropriate
remedy is provided for collecting sums due from the
State or any of its agencies, there is no inference that
the legislature intended to include such property, and
the presumption is that it was to be exempted.

Affirmed.

COCKRILL, C. J., dissenting. I do not concur in the
court's judgment in this case, and do not think that the
authorities relied upon sustain it. Nor does it seem to
me that there is a division in the express adjudications
on the question involved.

The principle which underlies the difference between
a tax for general benefits and a special assessment for

the payment of local improvements, recognized in the opinion, should in my judgment resolve the present question against the school district. The former is recognized by the authorities as a continuing burden that must be submitted to for the public good, while the latter is in the nature of a payment for a direct and immediate local benefit—*a quid pro quo*, as much as the consideration is which is agreed to be paid for the purchase of any other benefit or improvement. It is a principle of natural equity that one who enjoys a benefit shall pay for it. When the improvement is made in accordance with the statute, this moral obligation becomes a legal one, unless the exemption is found in the written law. No valid reason exists why the State, the county, the city or the school districts should not pay for the benefits derived by them, the same as other property owners. *Hassan* v. *Rochester*, 67 N. Y. 528, 535.

There is no presumption that the legislature intended to violate a principle of natural equity. It may do so when not inhibited by the Constitution, but justice to a co-ordinate department should impel us to establish the rule that inclusion and not exemption will be presumed when the act is silent in cases like this, because the legislature is presumed to intend to act fairly.

The language of the act under consideration is broad enough to include public property, and the only plausible reason, it seems to me, that is given for exempting it is that a governmental agency will be lost or impaired by subjecting the property of the State, county, etc., to sale to satisfy the claim. But a complete answer to that argument is that it is not necessary to resort to that remedy. The property need not be sold. No property used by a city, county or school district in furthering the design of the origin of the corporation can be sold to satisfy a debt ; but it has never been considered that that circumstance was a prohibition against liability.

On the contrary, such corporations are constantly compelled to pay their legal obligations without a sale of the public property owned by them.

The cases cited by the court to sustain its judgment go no further than to hold that property such as that in question cannot be sold, and they do not, therefore, reach the question in the case.

Thus the case of *State* v. *Hartford*, 3 Am. & Eng. Corp. Cases, 610, and that of *County Commissioners* v. *Maryland Hospital*, 62 Md. 127, were both attempts to sell the State's property which was used for governmental purposes, to pay for a local improvement; and the efforts failed because the sale was not authorized. The case of *Worcester County* v. *Worcester*, 116 Mass. 193, was a like effort to deprive the county of its court house and jail, and met with a like fate.

The case of *Edgerton* v. *Huntington School Township*, 126 Ind. 261, does not seem to bear upon the question; and that of *Toledo* v. *Board of Education*, 26 N. E. Rep. 403, does not sustain the point to which it is cited by the court.

In the first of the two cases last cited, the court decided only that lands granted by Congress to the State for school purposes could not be subjected to direct or indirect taxation, and that for that reason the legislature had no *power* to subject them to assessment for local improvement. The court in that case relies upon a similar case in Illinois, but the Supreme Court of the latter State had no trouble in reconciling it with the opposite of the rule it is now cited to sustain. The question of the power of the legislature of this State to subject the land in suit to assessment for local improvement is conceded.

The case of *Toledo* v. *Board of Education* is meagerly reported, and the opinion throws no light on the question at issue. It is there adjudicated, however,

that the city, in which the school property which abutted the local improvement was situated, should pay the assessment, thereby relieving the other abutting owners of the burden of paying the school property's *pro rata*. The city, I take it, was co-extensive with the school district, while the improvement district comprised but one of a large number of streets. The court, therefore, practically reached the conclusion contended for by the Improvement Board in this case. The case may then be said to sustain the board's position.

Confining the language of the other three cases to the facts before the courts determining them, the only rule that can legitimately be deduced from them is that public property held for governmental purposes cannot be *sold* to pay for local improvements unless the sale is expressly authorized ; and that general language in a statute will not be deemed to be intended to change the law and authorize the sale of such property.

To that rule I fully assent. It is in accord with the Illinois decisions cited by the court as opposed to the conclusion reached in it, and it does not militate against the liability of the school district to be enforced otherwise than by sale of its property, as the Illinois opinions explain. All that relates to the subject in the Georgia case cited is confessedly *obiter*. The authority of Dillon and of Cooley is invoked in the opinion in this case, but it is not and cannot be claimed that either has lent the weight of his name to maintain the judgment.

It is true the statute creates no remedy except by sale of the property improved. But when once it is established that there is no intention to exempt the school district from liability, the courts will devise a remedy if the legislature has provided none, for a right never fails for lack of a remedy. The Illinois law is the same as ours in that respect, and the question is satis-

factorily answered in *McLean County* v. *Bloomington*, 106 Ill. 209, and cases there cited.

There is nothing in any of the cases cited by the court to militate against the doctrine that the courts will devise a remedy in such a case.   The first two cases, as I have before said, were against the property of the State.   As against the State the courts are powerless, for the suitor can have no remedy against the State unless it is expressly provided by the written law.   The moral obligation of the State to contribute its *pro rata* of the payment due remains nevertheless, and the collection fails only because the courts are without power as against the State.   *Hassan* v. *Rochester*, 67 N. Y. *sup.*

The case in the 116 Mass. was a proceeding by certiorari to quash the illegal levy by which it was sought to divest the county of the title to its court house.   In such cases there is no discretion in the court except to grant or deny the writ.   Consequently no other remedy could have been granted by the court in that case.

The doctrine that the intention to exempt public property from taxation will be presumed because it is not probable that the public will tax itself to raise money to pay over to itself, is manifestly inapplicable to the case of an improvement board.   The local improvement board is not the public.   It is not a municipality, or a part of the governmental function ; it is only an agency of the property holders for the purpose of making the required improvement and collecting the assessments to pay for it.   *Fitzgerald* v. *Walker*, 55 Ark. 148 ; *Pine Bluff Water Co.* v. *Sewer District, ante,* p. 205.   It is a small part only of the school district, and to collect a tax from the whole city, (which is the school district), to pay for improving the street in front of the school would not be a case of the public taxing itself to repay itself, any more than if the tax was collected from the public to pay the contractor who built the school

house on the school ground. It would be just as convincing to argue that no tax should be collected from the contractor's property, because it must be repaid to him.

But, in addition to all this, there is another view of the subject which I think ought not to be passed over without consideration.

The Constitution recognizes the difference between a tax and a local assessment, and points out the exemptions intended to operate against the first (Art. 16, sec. 5), but makes no exemption of liability to pay for the benefit derived from the local improvement. Art. 19, sec. 27. Both sections are in the same instrument, and were adopted at the same time. Is it not fair to presume that as the framers made the exemptions in one case and made none in the other, they intended no exemptions which they did not express? *McLean County* v. *Bloomington*, 106 Ill. *sup.* ; *Adams County* v. *Quincy*, 130 *id.* 566; *Sioux City* v. *School District*, 55 Iowa, 150; *St. Louis Public Schools* v. *St. Louis*, 26 Mo. 468.

Moreover, the command of that instrument is that assessments for local improvements shall be uniform. Where a part is exempt, uniformity is destroyed. *Davis* v. *Gaines*, 48 Ark. 370; *Monticello* v. *Banks*, *ib.* 251. When the Constitution has said that the assessment shall be uniform, by what rule of construction shall the court say it shall not be?

I think the judgment should be in favor of the Improvement Board.